O, JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUSTEES OF THE SOUTHERN CALIFORNIA IBEW-NECA PENSION PLAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CRUZ, PRADO & ASSOCIATES, INC., a California corporation doing business as "CP SYSTEMS," <br><br> Defendant. | Case No.: 2:21-cv-06095-MEMF-MAA <br><br> **ORDER GRANTING MOTION FOR DEFAULT JUDGMENT [ECF NO. 58]** |

Before the Court is a Motion for Default Judgment fled by Plaintiffs Trustees of the Southern California IBEW-NECA Pension Plan, et al. ECF No. 58. For the reasons stated herein, the Court GRANTS the Motion for Default Judgment.

/ / /

/ / /

/ / /

## I. Background

The Court has already addressed some of the background of this litigation in a previous Order, and will only cover aspects relevant to this Order here. *See* ECF No. 66.

### A. Factual Background[1]

The numerous plaintiffs in this action are all trustees of trusts that manage various funds on behalf of unions and related entities. *See* ECF No. 1 ("Complaint" or "Compl.") ¶ 1. The full list of plaintiffs is as follows: Trustees of the Southern California IBEW-NECA Pension Plan, Trustees of the Southern California IBEW-NECA Defined Contribution Trust Fund, Trustees of the Southern California IBEW-NECA Health Trust Fund, Trustees of the Southern California IBEW-NECA Supplemental Unemployment Benefit Trust Fund, Trustees of the Los Angeles County Electrical Educational and Training Trust Fund, Trustees of the National Electrical Benefit Fund, Trustees of Southern California IBEW-NECA Labor-Management Cooperation Committee, Trustees of the National NECA-IBEW Labor-Management Cooperation Committee Trust Fund, Administrative Maintenance Fund, Contract Compliance Fund, Los Angeles Electrical Workers Credit Union, and Southern California IBEW-NECA Administrative Corporation (collectively, "Plaintiffs"). *See id.*

Defendant Cruz, Prado & Associates, Inc., d/b/a CP Systems ("CPS") is a corporation. *See id.* ¶ 6. Plaintiffs allege that CPS was an "employer" obligated to make contributions to the various trusts pursuant to collective bargaining agreements and other contracts, and that CPS failed to make the required payments. *See id.* ¶¶ 12–13, 16. Plaintiffs allege that CPA failed to make at least $316,589.66, of which Plaintiffs have collected $87,814.79 from various sources, leaving $228,774.87 unpaid at the time of the filing of the complaint. *See id.* ¶ 16.

### B. Procedural History

Plaintiffs filed suit in this Court on July 28, 2021. See ECF No. 1 ("Complaint" or "Compl."). Plaintiffs bring two causes of action: (1) breach of written collective bargaining agreements and related trust agreements; and (2) violations of § 515 of the Employee Retirement Income Security Act ("ERISA," 29 U.S.C § 1132(e)(1)). *Id.* at ¶¶ 24–33.

---

[1] The following factual background is derived from the allegations in Plaintiffs' Complaint. *See* ECF No. 1.

CPS answered on January 14, 2022. *See* ECF No. 19. After CPS's counsel withdrew and was not replaced, and CPS violated a series of the Court's Orders, Plaintiffs moved to strike CPS's answer and for the clerk to enter default. *See* ECF No. 51. The Court held a hearing on that motion on June 29, 2023, at which the Court indicated that the motion would be granted. *See* ECF No. 57. The Court issued a Minute Order documenting this hearing on June 29, 2023, and ordered the parties to file a Motion for Default Judgment within 45 days. *See* ECF No. 57. The Minute Order did not explicitly grant the previous motion or order the Clerk of Court to enter default. The Court's Order granting the previous motion—that is, ordering CPS's Answer stricken and ordering the Clerk of Court to enter default—was not docketed until March 17, 2024, due to a clerical error. *See* ECF No. 66. The Clerk of Court entered default on March 18, 2024. *See* ECF No. 67.

Plaintiffs filed the instant Motion for Default Judgment on August 18, 2023, along with various supporting documents. *See* ECF No. 58 ("Motion" or "Mot."). No opposition or response has been filed by CPS.

On May 6, 2024, the Court ordered Plaintiffs to file a statement describing: (1) an updated prejudgment interest calculation given the passage of time; and (2) whether there had been any further successful collection efforts since the filing of the Motion. *See* ECF No. 70. Plaintiffs responded on May 8, 2024. *See* ECF No. 70.

The Court held a hearing on the Motion on May 9, 2024. In advance of the hearing, the Court Ordered Plaintiffs to provide notice of the hearing to CPS and to file a proof of service regarding that notice. *See* ECF No. 68. Plaintiffs provided notice to CPS on May 3, 2024.[2] *See* ECF No. 69. CPS did not appear at the hearing.

///

---

[2] Plaintiffs provided notice to Mark Cruz, who is the registered Agent for Service of Process for CPS. *See* ECF No. 69. The Court also sent a tentative ruling via email to Mr. Cruz in advance of the hearing. Mr. Cruz responded to the Court's email and stated that he was unknowingly and inaccurately listed as CPS's agent for service on paperwork filed by Brian Armstrong, and that Mr. Cruz sold his interest in CPS to Mr. Armstrong in 2020. Mr. Cruz requested that future communication be directed to Mr. Anderson but did not provide contact information for Mr. Armstrong. At the hearing, Plaintiffs stated that they do not have contact information for Mr. Armstrong.

3

## II. Applicable Law

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant default judgment after the Clerk of the Court enters default under Rule 55(a). Local Rule 55-1 requires the party seeking default judgment to file a declaration establishing: (1) when and against what party the default was entered; (2) the pleading on which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator, or other like fiduciary who has appeared; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice, if required by Federal Rule of Civil Procedure 55(b)(2). C.D. Cal. L.R. 55-1.

Once default has been entered, the factual allegations in the complaint, except those concerning damages, are deemed admitted by the non-responding party. *See* Fed. R. Civ. P. 8(b)(6); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). However, default judgment is not automatic upon the Clerk's entry of default; rather, it is left to the sound discretion of the court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092–93 (9th Cir. 1980). When deciding whether to enter default judgment, courts consider seven factors, commonly known as the *Eitel* factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## III. Discussion

In considering Plaintiffs' Motion, the Court must analyze: (1) whether the Court has jurisdiction over CPS; (2) whether Plaintiffs have satisfied the procedural requirements of Local Rule 55-1; and (3) whether the *Eitel* factors weigh in favor of granting default judgment. If these are shown, the Court will finally consider the appropriate remedy.

### A. The Court has jurisdiction over CPS.

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject

matter and parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court therefore examines jurisdiction in addition to the procedural requirements under Local Rule 55-1 and the *Eitel* factors.

First, the Court finds that it has subject matter jurisdiction over this action based on a federal question. *See* 28 U.S.C. § 1331. Federal courts have subject matter jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." *See id.* Here, Plaintiffs bring a claim pursuant to ERISA, a federal law, which gives the Court subject matter jurisdiction. *See* Compl.

Second, the Court finds that it has personal jurisdiction over CPS. Personal jurisdiction over a defendant may be acquired in one of two ways: by personal service of that defendant or by means of a defendant's 'minimum contacts' with the jurisdiction." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Personal service is generally effective within the boundaries of the state in which the federal court sits. *Id.* Here, CPS's agent for service of process was served in California. *See* ECF No. 10. Hence, the Court has personal jurisdiction over CPS.

### B. Plaintiffs have not satisfied the procedural requirements of Local Rule 55-1, but the Court will nevertheless grant the Motion if the other requirements are met.

The Court finds that Plaintiffs have not complied with the requirements of Local Rule 55-1, but in context, the Court finds that this noncompliance is not a reason to deny the Motion. Local Rule 55-1 requires the party seeking default judgment to file a declaration establishing: (1) when and against what party the default was entered; (2) the pleading on which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator, or other like fiduciary who has appeared; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice, if required by Federal Rule of Civil Procedure 55(b)(2). C.D. Cal. L.R. 55-1.

The Clerk of Court entered default as to CPS on March 18, 2024. *See* ECF No. 67. CPS has not responded to the complaint or otherwise appeared since then.

Plaintiffs filed a declaration asserting that: (1) the Court ordered Plaintiffs to file a Motion for Default Judgment within 45 days on June 29, 2023 (*see* ECF No. 62 ¶ 17); (2) CPS has not

requested any set aside of default or contacted Plaintiffs since that time (*see id.* ¶ 19); (3) CPS is not an infant or an incompetent person (*see id.* ¶ 20); and (4) the servicemembers relief act does not apply (*see id.*). The declaration did not specifically state when and against what party the default was entered, the pleading on which default was entered, or that the defaulting party was properly served with notice if required by Federal Rule of Civil Procedure 55(b)(2).

In context, the Court finds this small noncompliance excusable. As described above, the Court ordered Plaintiffs to file a Motion for Default within 45 days on June 29, 2024. *See* ECF No. 57. The Court entered this Order on the understanding that the Court's Order that the Clerk of Court should enter default as to CPS would be docketed before this deadline. But the second Order was not docketed until March 17, 2023, and the Clerk of Court did not enter default as to CPS until March 18, 2024. *See* ECF Nos. 66, 67. Thus, at the time that Plaintiffs filed the instant Motion, default had not been entered as to CPS, making it essentially impossible for Plaintiffs to file a sworn declaration as to when and against what party the default was entered and the pleading on which default was entered. As to the third deficiency—the failure to state that the defaulting party was properly served with notice if required by Federal Rule of Civil Procedure 55(b)(2)—the Court finds this is harmless in light of the Proof of Service Plaintiffs filed as to their Motion and Plaintiffs' service of notice regarding the hearing on this Motion to CPS. *See* ECF Nos. 58-2, 69.

Thus, although Plaintiffs are not strictly in compliance with Local Rule 55-1, the Court finds that this is not reason to deny the Motion.

**C. The *Eitel* factors weigh in favor of granting default judgment.**

The Court must next consider the *Eitel* factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) "the possibility of a dispute concerning material facts;" (6) whether the default was due to excusable neglect; and (7) the strong policy favoring resolution on the merits. *See Eitel*, 782 F.2d at 1471–72. For the reasons stated below, the Court finds that these factors taken together weigh in favor of granting default judgment against CPS.

First, the Court finds that Plaintiffs would suffer prejudice in the absence of default judgment. *See Eitel*, 782 F.2d at 1471–72. Because CPS has effectively refused to participate in

litigation for over a year, including by defying the Court's Orders, Plaintiffs have no way to obtain relief except through default judgment. This weighs in favor of default judgment.

Second and third,[3] the Court finds that the claims are essentially meritoriously pleaded and the complaint is sufficient, which weighs in favor of default judgment. *See id.* Notwithstanding the entry of default, the Court must still determine if the facts alleged give rise to a legitimate cause of action because "claims [that] are legally insufficient . . . are not established by default." *Cripps*, 980 F.2d at 1267. Because default has been entered, the Court will assume the allegations in the Complaint are true for this analysis. *See TeleVideo Sys.*, 826 F.2d at 917–18.

As to the first cause of action for breach of collective bargaining agreements, Plaintiffs allege that: collective bargaining agreements existed between Plaintiffs and CPS (*see* Compl. ¶¶ 5, 7–10); CPS breached these agreements by failing to make required payments totaling $316,589.66 (*see id.* ¶ 16); and Plaintiffs suffered damages (*see id.*). The required elements for a breach of contract claim are: "(1) [the existence of] the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014). Plaintiffs have not specifically alleged the second element—that Plaintiffs performed. However, this can be inferred from the allegations. To the extent that this claim is not meritoriously pleaded, the deficiency is small and could very likely be cured with a one-paragraph amendment. The Court does not find that this weighs against default judgment.

As to the second claim for a violation of ERISA, Plaintiffs have alleged that CPS was an "employer" obligated to make contributions to the various trusts pursuant to collective bargaining agreements and other contracts, and that CPS failed to make the required payments. *See* Compl. ¶¶ 12–13, 16. The relevant provision states that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

---

[3] The Court will consider the second and third *Eitel* factors together.

29 U.S.C. § 1145. The Court reads this as requiring two elements: (1) that CPS was an employer, and (2) that CPS failed to make the required contributions. *See id.* Plaintiffs pleaded allegations sufficient to meet these elements. Thus, the second cause of action is meritorious and adequately pleaded. The Court finds that this factor weighs in favor of default judgment.

Fourth, the Court finds that "the amount of money at stake in relation to the seriousness of the defendant's conduct" weighs in favor of default judgment. *See Eitel*, 782 F.2d at 1471–72. Plaintiffs seek a default judgment in the amount of $125,063.93, plus attorneys' fees and costs. *See* Mot. at 2; ECF No. 71. While this is a significant sum of money, when considered in relation to the alleged conduct, the Court finds that this weighs in favor of default judgment.

Fifth, the Court finds some possibility of dispute regarding material facts, which weighs against default judgment. *See id.* CPS at one point filed an Answer which denied many of Plaintiffs' allegations. *See* ECF No. 19. That answer has since been stricken. *See* ECF No. 66. However, that CPS filed the document suggests that CPS may dispute some facts. It is possible that CPS's non-participation in litigation is due to other issues, not due to a concession that the claims are meritorious. This factor weighs against default judgment.

Sixth, the Court finds no evidence that the default resulted from excusable neglect. *See id.* CPS was aware of this litigation, and at one point was participating, and then disappeared. This does not resemble excusable neglect.

And finally, seventh, the Court finds that the policy favoring resolution on the merits does not weigh strongly against default judgment. The Ninth Circuit's "starting point is the general rule that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The enactment of Rule 55(b), however, indicates that this preference, standing alone, is not always dispositive, as district courts have recognized in non-binding decisions. *See e.g.*, *Seiko Epson Corp. v. Prinko Image Co. (USA), Inc.*, No. 2:17-04501-AB (JCx), 2018 WL 6264988, at *3 (C.D. Cal. Aug. 22, 2018); *Pepsico, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *Santa Cerritos, Inc. et al v. Michael Penrod et al*, No. 8:22-cv-00030, ECF No. 91 (C.D. Cal. Feb. 22, 2024). Here, the Court finds that

in light of CPS's conduct and the history of this litigation, this policy does not weigh strongly against default judgment and is outweighed by other factors.

Considering the *Eitel* factors as a whole, the Court finds that they favor default judgment. Thus, the Court will grant the Motion.

**D. The Court will award Plaintiffs the remedies they request.**

Having decided that the Motion will be granted, the Court must now determine the appropriate remedy. Plaintiffs seek an award of: $125,063.93 in damages (including prejudgment interest and liquidated damages), $103,626.21 in attorneys' fees, $807.00 in costs, and post-judgment interest "from the date of entry of the judgment herein until paid in full." *See* ECF No. 59 ("MPA") at 28. The Court need not accept the factual allegations regarding damages as true, and so will review the evidence provided. *See TeleVideo Sys.*, 826 F.2d at 917–18 (9th Cir. 1987).

First, as to damages, the Court finds it appropriate to award Plaintiffs the amount they requested. The damages sought include three components: $33,093.54 in unpaid fringe benefit contributions, $30,790.41 in prejudgment interest, and $61,179.97 in liquidated damages. MPA at 28; ECF No. 71. Plaintiffs have submitted evidence that CPS owed $316,589.66 for the period of July 2020 to October 2020. *See* ECF No. 60 ¶ 15, *see also* ECF No. ECF No. 60-14 (Plaintiffs submitted seven statements, showing various "Amount[s] Due," which sum to $316,589.66). Plaintiffs also submitted evidence that they had, as of the filing of the Motion, collected $272,768.57 from various sources, leaving the unpaid balance at $43,821.09.[4] *See* ECF No. 60 ¶¶ 16–20. Plaintiffs have since collected an additional $10,727.55. *See* ECF No. 71-1 ¶ 4. Thus, the Court finds it appropriate to award Plaintiffs $33,093.54 in unpaid benefits as they request. ERISA makes prejudgment interest mandatory in actions to collect unpaid contributions, with the interest "determined by using the rate provided under the plan" if the plan provides a rate. *See* 29 U.S.C. §

---

[4] The Complaint alleged that Plaintiffs had collected $87,814.79 leaving $228,774.87 unpaid. *See* Compl. ¶ 16. Plaintiffs continued their collection efforts since the filing of the Complaint and have now collected more. *See* ECF No. 60 ¶¶ 18(d)–(e) (describing collections in late 2021 which postdate the filing of the Complaint); ECF No. 71 (describing collections since the filing of the Motion).

1132(g)(2)(B). Here, the relevant rate is 8%.[5] *See* ECF No. 60 ¶ 21. This results in a prejudgment interest amount of $30,790.41 once some prejudgment interest already collected is accounted.[6] *See* ECF No. 71-1 ¶ 6; *see also* ECF No. 71-2. The Court will award this amount. ERISA also mandates liquidated damages, in an amount of whatever is greater: prejudgment interest or liquidated damages under the plan not exceeding 20%. *See* 29 U.S.C. § 1132(g)(2)(C). Here, the relevant plans mandate liquidated damages in an amount totaling $61,179.97 once adjustments are made for some damages already collected.[7] *See* ECF No. 60 ¶ 23. The Court will award this. In sum, the Court will award the $ $125,063.92 in damages requested.

Second, as to attorney's' fees and costs, Plaintiffs have submitted evidence that they are entitled to fees totaling $103,626.21 and costs of $807.00. In ERISA cases, reasonable attorneys' fees "are calculated using a hybrid lodestar/multiplier approach." *McElwaine v. US West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999). The Court should first determine an amount by multiplying a reasonable number of hours by a reasonable fee, and then consider various factors to determine overall reasonableness. *See Clark v. City of Los Angeles*, 803 F.2d 987, 991 (9th Cir. 1986). Having reviewed the evidence provided (*see* ECF No. 60 ¶ 25; ECF No. 61 ¶ 5; ECF No. 62 ¶¶ 2–6), the Court finds that Plaintiffs' proposed fee award is based on a reasonable number of hours (404.2 hours in total, *see* ECF No. 62 ¶ 3) and reasonable hourly rates (ranging from $120 to $390 per hour, *see id.*), and that the overall fee is reasonable. The Court will thus award Plaintiffs the $103,626.21 in attorneys' fees they seek. The Court will also award the requested $807.00 in costs. *See* MPA at 13, ECF No. 62 ¶ 6.

Finally, the Court will also award Plaintiffs post-judgment interest as they request. *See* Cal. Civ. Proc. Code § 685.010(a)(1) ("interest accrues at the rate of 10 percent per annum on the

---

[5] Plaintiffs actually aver that the relevant rates vary from 8% to 10% in the different plan documents, but request that the Court use 8%. *See* ECF No. 60 ¶ 21; *see also* MPA at 8. The Court will do so for simplicity.

[6] This calculation was done up to the date of May 9, 2024. *See* ECF No. 71-2.

[7] Plaintiffs clarified the calculation of liquidated damages at the hearing. The relevant agreements stated that liquidated damages would be calculated differently for (A) amounts that were not paid at all as of the filing of the complaint, versus (B) amounts that were paid late. *See* ECF No. 60 ¶ 23. Late paid amounts accrued interest up to a cap. *See id.* Later collection efforts that postdated the complaint did not affect the liquidated damages amount. *See id.*

principal amount of a money judgment remaining unsatisfied."). Thus, the Court will award Plaintiffs all remedies they request.

## IV. Conclusion

For the reasons stated herein, the Court ORDERS as follows:

1. The Motion is GRANTED, and Judgment shall be entered against CPS.
2. The Judgment shall be for $229,497.13 in total ($125,063.92 in damages, including prejudgment interest and liquidated damages, $103,626.21 in attorneys' fees, and $807.00 in costs), plus post-judgment interest as provided by law from the date of entry of the judgment herein until paid in full.

IT IS SO ORDERED.

Dated: May 9, 2024

_____
MAAME EWUSI-MENSAH FRIMPONG
United States District Judge